IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA           :     CRIMINAL ACTION
                                   :
         v.                        :
                                   :     No. 22-161
MICHAEL OHL, JR.                   :

MEMORANDUM

SCHMEHL, J. /s/ JLS                                    JULY 14, 2023

Defendant pled guilty to a one-count information charging him with possession with intent to distribute 5 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On April 5, 2023, the Court imposed a sentence of 84 months of imprisonment to be followed by 60 months of supervised release. Defendant received the benefit of a downward variance as the Court's sentence was significantly below the federal advisory guideline range of 121 to 151 months. The Defendant did not appeal his sentence. On May 8, 2023, just one month after the date Defendant was sentenced and before he could even be transferred from local to federal custody, Defendant filed a *pro se* motion for reduction of sentence pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i) based on compassionate release. The government has opposed the motion. For the reasons that follow, the motion is denied.

As a general rule, a district court may not modify a defendant's sentence after it has been imposed. 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825, (2010). However, the First Step Act provides for a compassionate release exception to that general rule, stating that: "(A) the court, upon motion of the Director of

1

the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility1, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction"; "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 (stating that the court may reduce a term of imprisonment if it finds, after consideration of the factors in § 3553(a), that "[e]xtraordinary and compelling reasons warrant the reduction," "[t]he defendant is not a danger to the safety of any other person or to the community," and "[t]he reduction is consistent with this policy statement").

Although neither U.S.S.G. § 1B1.13 nor Congress defines the term "extraordinary and compelling," the Sentencing Commission's commentary to § 1B1.13, provides guidance. See U.S.S.G. § 1B1.13 cmt. n.1. The commentary provides that "extraordinary and compelling reasons" can include (1) certain specified serious medical conditions (a terminal illness or a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care" in prison and "from which he or she is not expected to recover"); (2) the defendant's advancing age (over 65), in

---

1 The government concedes that since the Defendant has not yet been held in a Bureau of Prisons facility, exhaustion is not required.

2

combination with a serious deterioration of his health and his successful completion of at least 10 years or 75% of his sentence; (3) the defendant's family circumstances, and (4) "[o]ther [r]easons ... [a]s determined by the Director of the Bureau of Prisons" to be extraordinary and compelling, either alone or in combination with the three prior reasons. U.S.S.G. § 1B1.13, cmt. n.1.

Defendant seeks compassionate release solely on the ground of family circumstances, claiming that due to Defendant's incarceration, his fiancée, Tianna Williams, is unable to care for her four children (ages 3-10) from a previous relationship and for the 17-month old daughter she shares with Defendant. Defendant has attached to his motion a letter to the Court from Ms. Williams written on May 1, 2023. [ECF 29 pp.11-13]. In her letter, Ms. Williams contends that she suffers from iron deficiency anemia, abnormal cells in her cervix, a skin condition in which she develops golf-size lumps under her arms that sometimes require surgical removal, visual disturbance, non-intractable headache, excessive sleepiness, bi-polar disorder, adjustment disorder, eating disorder, anxiety and PTSD. *Id.* She further claims her mother is in hospice while battling stage 4 cervical cancer and kidney failure. *Id.*

In application note 1 to the policy statement, the Commission defines the "extraordinary and compelling" family circumstances that may justify compassionate release as follows:

> (C) Family Circumstances.
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13 n.1(A)-(C).

In relation to a motion for compassionate release grounded on the claim a defendant is the sole person available to provide care for a minor child, a defendant typically must establish that all other potential caregivers for their minor child are incapacitated. *United States v. Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *6 (E.D. Pa. Oct. 9, 2020) (Slomsky, J.). To prove incapacitation, a defendant must establish a person is "completely disabled" or unable to "carry on any self-care and [are] totally confined to a chair or bed." *Id.* at *7. Moreover, it is not enough to show a potential caregiver is merely "inconvenienced" by the childcare or "somewhat sick." *United States v. Seals*, 509 F.Supp.3d 259, 263 (E.D. Pa. 2020) (McHugh, J.) ("Where relief has been denied, it is typically where a caregiver is inconvenienced by the defendant's incarceration, or is somewhat sick, but not incapacitated."); *Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *7 (finding, in connection with the consideration of a motion for compassionate release, that a defendant's wife was not incapacitated from caring for the couple's son despite being diagnosed with both breast cancer and diabetes).

Neither Defendant nor Ms. Williams have presented any medical evidence to support that Ms. Williams suffers from any of her alleged maladies, let alone that she is incapacitated by any of them. Indeed, Ms. Williams spoke on Defendant's behalf at the sentencing hearing less than a month before she wrote her May 1, 2023 letter and not once mentioned any of her alleged maladies or potential hardships she would suffer were the Defendant to be incarcerated. She did, however, mention that she operates a used-car dealership in Easton, Pennsylvania. In addition, the presentence report

4

("PSR") reveals that Ms. Williams was interviewed by the probation officer on February 6, 2023 and visited at home by the probation officer of February 16, 2023 and never raised any of these issues. The PSR advised only that "the defendant has no marital history and has been in a two-year relationship with Tiana Williams (age 27), who operates Automo-Deals, a used-car dealership in Easton, Pennsylvania. Tianna suffers from bipolar disorder and anxiety but receives treatment." PSR at ¶ 48.

In addition, the PSR referred to other possible caretakers who are not mentioned in Defendant's motion. The PSR stated:

> On February 6, 2023, the probation officer interviewed Ms. Williams via telephone, during which she confirmed their two-year relationship and the information about the children. Ms. Williams has shared custody of Anthony along with her mother, shared custody of McKenna and Julian with their paternal grandparents, and visitation with Arianna through a therapeutic program (Arianna's father has custody). She confirmed her mental health issues and treatment. She believes the defendant has undiagnosed depression and anxiety and would benefit from a mental health evaluation and treatment. In addition, since he was drinking excessively and taking hallucinogens prior to his arrest, he would further benefit from substance abuse treatment.

PSR at ¶ 49. See also PSR at ¶ 50 (describing the home visit on February 16, 2023, in which the officer found the home "well maintained and kept").

Defendant has simply failed to present evidence to sufficiently establish that Ms. Williams has a combination of medical issues that incapacitate her from caring for the five children. Absent objective medical evidence that demonstrates that Ms. Williams is completely disabled, she cannot be considered incapacitated. He has also failed to establish that, even if Ms. Williams were totally incapacitated Defendant would be the sole caregiver of the five children, as the father from the previous relationship and his parents also shared custody of the children. See PSR at ¶ 49.

Finally, with regard to the 18 U.S.C. § 3553(a) factors, the Court will merely state that allowing Defendant who has a criminal history of IV under the guidelines, to serve only 1 month of an 84-month term for a "serious drug crime", does not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. Indeed, given Defendant's history of substance abuse described in detail in the PSR at ¶ 58, the five children may be better off not being cared for by this Defendant even if he is the only available caretaker.

The Court is not unsympathetic to Defendant's plight and recognizes the dysfunctional upbring Defendant suffered from. However, with incarceration typically comes family upheaval. That is why it is important for a defendant to consider this potential upheaval before engaging in a criminal act.